99 F.3d 550
 45 Fed. R. Evid. Serv. 1327
 William HATHAWAY, Plaintiff-Appellant,
v.
Thomas A. COUGHLIN, Commissioner of the Department of
Correctional Services, E.W. Jones, Superintendent
of Great Meadow Correctional Facility,
Foote, Dr., Defendants-Appellees.
 No. 465, Docket 95-2389.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 8, 1996.
Decided Nov. 8, 1996.
 
 John D. Kimball, Healy & Baillie, New York City (Shari M. Rubin, Healy & Baillie, on the brief) for plaintiff-appellant.
 Michael S. Buskus, Assistant Attorney General of the State of New York (Dennis C. Vacco, Attorney General, Peter H. Schiff, Deputy Solicitor General, and Peter G. Crary, Assistant Attorney General, on the brief) for defendants-appellees.
 Before: OAKES and ALTIMARI,* Circuit Judges,
 ALTIMARI, Circuit Judge:
 
 
 1
 Plaintiff-appellant William Hathaway ("Hathaway") appeals from a judgment of the United States District Court for the Northern District of New York (Scullin, J.) dismissing his § 1983 action alleging deliberate indifference by prison officials to his medical condition, upon a jury verdict rendered in favor of the defendant-appellee Dr. Joseph Foote ("Dr. Foote"). On appeal, Hathaway contends: (1) that the district court's instruction to the jury on deliberate indifference was erroneous and confusing, and (2) that the district court erred in excluding certain evidence pursuant to Fed.R.Evid. 403. We agree that the jury instruction was erroneous, and reverse.
 
 Background
 
 2
 This case comes before us for the third time on appeal. Familiarity with our previous decisions, see Hathaway v. Coughlin, 841 F.2d 48 (2d Cir.1988) ("Hathaway I ") and Hathaway v. Coughlin, 37 F.3d 63 (2d Cir.1994) ("Hathaway II ") is presumed, and we briefly summarize the relevant facts.
 
 
 3
 Hathaway commenced the present action in October of 1982 against Thomas A. Coughlin ("Coughlin"), Commissioner of the New York State Department of Correctional Services, E.W. Jones ("Jones"), Superintendent of the correctional facility where the events underlying this case occurred, and Dr. Foote, a doctor at the correctional facility. According to the complaint, the defendants were deliberately indifferent to Hathaway's medical condition, in that, among other things, they did not tell Hathaway about two broken pins in his left hip until a year after Dr. Foote had discovered that the pins were broken, and then took another year to schedule Hathaway for surgery to repair the damage caused by the broken pins. During these two years Hathaway alleged that he frequently complained of severe pain in his hip to Dr. Foote and other prison officials.
 
 
 4
 In Hathaway I, we reversed the district court's grant of summary judgment in favor of the defendants, finding that Hathaway had come forward with sufficient facts in support of his deliberate indifference claim to withstand a motion for summary judgment. See id., 841 F.2d at 50. Upon remand, the case proceeded to trial. At the close of the evidence, the district court dismissed the complaint against the defendants Coughlin and E.W. Jones, because they lacked the requisite personal involvement in Hathaway's care. The district court reserved judgment as to dismissing the claims against Dr. Foote. The jury deadlocked, and the court declared a mistrial. Dr. Foote then moved for judgment as a matter of law and dismissal of the claims against him pursuant to Fed.R.Civ.P. 50(b). That motion was denied, and we affirmed the district court on appeal, see Hathaway II, 37 F.3d at 68-69.
 
 
 5
 Our affirmance in Hathaway II rested upon clear support in the record for a finding that Hathaway had a serious medical need, based upon: (1) the fact that between July 1980, when Dr. Foote first discovered the broken pins while viewing an X-ray of Hathaway's hip, and October 1983, when the broken pins were removed, Hathaway experienced great pain, had difficulty walking, and complained of hip pain to prison officials, including Dr. Foote, on almost seventy occasions, and (2) a rational jury could find that the broken pins contributed to Hathaway's pain. See id. at 67. Our affirmance also rested on the conclusion that a rational jury could find on the evidence presented during the trial that Dr. Foote was deliberately indifferent to Hathaway's serious medical needs, by knowing of and disregarding an excessive risk to Hathaway's health. This evidence consisted of, among other things: (1) the fact that Dr. Foote never informed Hathaway of the broken pins or the possibility of surgery following the discovery, even though the presence of broken pins in a hip would give most people pause to consider surgery, (2) the course of treatment Dr. Foote prescribed for Hathaway after discovering the broken pins--taking anti-inflammatory medication and wearing orthopedic shoes--did not alleviate his suffering, (3) two student attorneys wrote on behalf of Hathaway requesting further evaluation and additional treatment of Hathaway's hip pain, and (4) Dr. Foote did not refer Hathaway for surgery until after the present suit was filed. See id. at 67-68.
 
 
 6
 The case was retried against Dr. Foote. The jury rendered a verdict in favor of Dr. Foote, finding that, although Hathaway met his burden of proving that he had a serious medical need between 1980 and 1983, he did not prove that Dr. Foote was deliberately indifferent towards that need. Hathaway moved for a new trial, and his motion was denied.
 
 
 7
 Hathaway now appeals, contending that the district court erred in its "deliberate indifference" charge to the jury. Specifically, Hathaway contends that the district court committed reversible error by instructing the jury that if it found evidence of medical malpractice, then it could not reach the issue of deliberate indifference. In addition to challenging the jury instruction, Hathaway contends that the district court erred in excluding under Fed.R.Evid. 403 certain expert testimony and documentary evidence concerning Dr. Foote's alleged non-treatment of Hathaway's syphilis.
 
 Discussion
 1. Jury Charge
 
 8
 The standard governing review of a district court's jury charge is well-established. A jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it does not adequately inform the jury of the law. See Schermerhorn v. Local 100, Transport Workers Union, 91 F.3d 316, 322 (2d Cir.1996). As an appellate court, this Court need only "satisfy itself that [the] instructions, taken as a whole and viewed in light of the evidence, show no tendency to confuse or mislead the jury as to principles of law which are applicable." Norfleet v. Isthmian Lines, Inc., 355 F.2d 359, 362 (2d Cir.1966); accord Anderson v. Branen, 17 F.3d 552, 556 (2d Cir.1994). Thus, a jury instruction will be deemed adequate if "the charge, taken as a whole, is correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it." Schermerhorn, 91 F.3d at 322 (internal quotations and citations omitted).
 
 A. Deliberate Indifference
 
 9
 As this Court explained in Hathaway II, the deliberate indifference standard embodies both an objective and a subjective prong. Objectively, the alleged deprivation must be "sufficiently serious," in the sense that "a condition of urgency, one that may produce death, degeneration, or extreme pain" exists. See id., 37 F.3d at 66 (citing Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)). Subjectively, the charged official must act with a sufficiently culpable state of mind. Id. According to the United States Supreme Court, the subjective element of deliberate indifference "entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, ----, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994). The subjective element requires a state of mind that is the equivalent of criminal recklessness; namely, when the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at ----, 114 S.Ct. at 1979; see also Hathaway II, 37 F.3d at 66.
 
 
 10
 With respect to medical malpractice and deliberate indifference, the Supreme Court has further explained that mere allegations of negligent malpractice do not state a claim of deliberate indifference:
 
 
 11
 Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.
 
 
 12
 Estelle v. Gamble, 429 U.S. 97, 106 & n. 14, 97 S.Ct. 285, 292 & n.14 , 50 L.Ed.2d 251 (1976); see also Hathaway II, 37 F.3d at 68 ("mere medical malpractice does not constitute an Eighth Amendment violation").
 
 
 13
 However, while "mere medical malpractice" is not tantamount to deliberate indifference, certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces "a conscious disregard of a substantial risk of serious harm," Farmer, 511 U.S. at ----, 114 S.Ct. at 1980. Accordingly, not every instance of medical malpractice is, a priori, precluded from constituting deliberate indifference.
 
 B. District Court's Charge
 
 14
 In charging the jury on deliberate indifference, the district court correctly explained that deliberate indifference involves unnecessary and wanton infliction of pain, or other conduct that shocks the conscience. It also correctly explained to the jury that the defendant need not expressly intend to inflict the unnecessary pain, but, rather, can establish the element by proving that the defendant acted recklessly. The court then proceeded to explain what it meant by "recklessly:"
 
 
 15
 Now, by recklessly, I mean that the plaintiff must prove two things by a preponderance of the evidence. First, Mr. Hathaway must prove that Dr. Foote knew of a substantial risk of serious harm to Mr. Hathaway's health. Second, Mr. Hathaway must prove that Dr. Foote consciously disregarded that risk. The plaintiff need not show that Dr. Foote failed to act, believing that harm would actually befall Mr. Hathaway. It is sufficient if plaintiff demonstrates that Dr. Foote failed to act despite his knowledge of a substantial risk of serious harm to Mr. Hathaway's health.
 
 
 16
 Now, merely inadvertent failure to adequately diagnos[e] or treat the plaintiff's medical condition might be sufficient to make the defendant liable in a medical malpractice or negligence action. However, such an inadvertent failure is not sufficiently reckless to establish a claim under the Eighth Amendment. Thus, if you find that Dr. Foote's actions reflect a simple lack of due care, negligence, or medical malpractice with respect to the plaintiff, then you must find in favor of the defendant and need not proceed any further in your deliberations.
 
 
 17
 I should point out here and, you will recall, that there has been expert testimony on this point as to the medical care. Now, while it may be evidence of a deliberate indifference, that alone is not sufficient if you were satisfied there is medical malpractice. Understand that?
 
 
 18
 (emphasis added).
 
 
 19
 The first and second paragraphs excerpted above were contained in the court's written instructions to the jury. The third paragraph was spoken extemporaneously by the court during its charge. The plaintiff objected to the instruction, on the ground that the third paragraph was an inaccurate statement of the law. Indeed, upon a readback of the instruction the district court acknowledged that its statement about malpractice "isn't as complete as it could have been," and that it "didn't want to spend a lot of time on it." The district judge further acknowledged that "I think I can be a little more thorough in explaining [the instruction]." We agree with the plaintiff that the instruction is erroneous.
 
 
 20
 While the first paragraph excerpted above correctly states the law, the last two paragraphs do not because they expressly state that a finding of medical malpractice precludes a finding of deliberate indifference. That is an inaccurate statement of the law; the instruction fails to distinguish mere malpractice based on negligence from malpractice based on the kind of culpable recklessness underlying liability for deliberate indifference. As a result, the district court's instruction erroneously compels a juror to conclude that any medical malpractice precludes a finding of deliberate indifference. Moreover, apart from being inaccurate, the third paragraph is very confusing because it states that even if there is evidence of deliberate indifference, that evidence is insufficient if the jury finds there is medical malpractice.
 
 
 21
 We reiterate that in raising the issue of medical malpractice in Estelle, the Supreme Court was not establishing a per se rule precluding any malpractice from being actionable under the Eighth Amendment. Rather, it raised the concept to explain that certain kinds of medical misconduct--specifically, the "inadvertent failure to provide adequate medical care" and "negligen[ce] in diagnosing or treating a medical condition," id., 429 U.S. at 105-06, 97 S.Ct. at 292--did not rise to the level of deliberate indifference. The Supreme Court's statement, however, cannot be construed to mean that there are no instances of malpractice that can rise to the level of deliberate indifference.
 
 
 22
 A correct jury instruction in a case such as the present one requires elaborating the concept of "malpractice," if it is raised at all, because to the layperson the term can encompass a range of conduct beyond mere negligence. Having interjected the term in its jury charge, the district court was then obligated to clarify it by delineating the kind of medical malpractice that is actionable under the Eighth Amendment from the kind that is not. By not doing so, and then stating that even if there is evidence of deliberate indifference, such evidence is insufficient if the jury is satisfied there is medical malpractice, the district court's charge misled the jury about the law and confused it. The charge is, therefore, erroneous and constitutes reversible error.
 
 
 23
 Moreover, the error is not harmless. The jury was instructed that if they believed Dr. Foote committed malpractice, then they could not find deliberate indifference even if there was evidence of it. That goes to the very heart of the plaintiff's claim, and effectively precludes a finding of liability where one may be warranted. See Hendricks v. Coughlin, 942 F.2d 109, 113-14 (2d Cir.1991) (where jury instructions create an erroneous impression regarding the standard of liability, it is not harmless error because it goes directly to plaintiff's claim, and a new trial is warranted).
 
 2. Exclusion of Evidence
 
 24
 The plaintiff contends that the district court erred in excluding evidence concerning Dr. Foote's alleged non-treatment of Hathaway's syphilis. The evidence consisted of a document showing that Hathaway had inactive syphilis, and in testimony by Dr. Foote and other experts about the lack of treatment for this condition. According to Hathaway, the evidence was probative and relevant to his claim that Dr. Foote was deliberately indifferent towards his medical condition. The district court excluded the evidence pursuant to Fed.R.Evid. 403, on the grounds that it was prejudicial, irrelevant, lacked probative value, and confusing.
 
 
 25
 The district court's interpretation of the Federal Rules of Evidence is given plenary review. However, if based upon a proper interpretation of Rules, "[w]e will reverse the evidentiary rulings of a district court only if they are manifestly erroneous. Absent such an abuse of discretion, a trial court's rulings on evidence will be left undisturbed." Phoenix Assocs. III v. Stone, 60 F.3d 95, 100 (2d Cir.1995) (citing cases).
 
 
 26
 Here, introducing the evidence concerning Dr. Foote's failure to treat Hathaway's syphilis would have confused the jurors on the issue of Dr. Foote's culpable state of mind with respect to the issue of his deliberate indifference to Hathaway's hip pain. According to the court, the evidence regarding the syphilis may have been indicative of negligence and incompetence, but not of deliberate indifference to a serious medical need because Dr. Foote did not perceive a serious risk to Hathaway's health arising from the diagnosis of inactive syphilis. Thus, even though the evidence may have been probative of Dr. Foote's neglect of Hathaway, the jurors easily could have been confused by equating and interchanging the evidence of negligence in one circumstance with evidence of deliberate indifference in another. Accordingly, the district court's decision to exclude the evidence under Rule 403 can not be said to be manifestly erroneous and an abuse of discretion.
 
 
 27
 Nonetheless, because this case will be remanded for a new trial, additional evidence may be presented by the plaintiff showing Dr. Foote's failure to treat Hathaway's syphilis was the result of deliberate indifference to a serious medical need. In the face of such new evidence, the district court is free to reconsider its ruling in the matter.
 
 Conclusion
 
 28
 For the reason stated above, the judgment of the district court is affirmed in part, reversed in part, vacated, and the matter remanded for a new trial.
 
 
 
 *
 This matter was not decided during the lifetime of our beloved colleague J. Daniel Mahoney. The Honorable J. Daniel Mahoney, who was a member of the panel, died on October 23, 1996, and the appeal is being decided by the remaining two members of the panel, who are in agreement. See Local Rule § 0.14(b)